(135 App. Div. 634.)

### In re HARDENBROOK.

(Supreme Court, Appellate Division, First Department. December 31, 1909.)

1. CRIMINAL LAW (§ 510*)—TESTIMONY OF ACCOMPLICE—CORROBORATION.

    At common law, there was no absolute prohibition against the conviction of a person charged with crime upon the uncorroborated testimony of an accomplice.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1124–1126; Dec. Dig. § 510.*]

2. ATTORNEY AND CLIENT (§ 53*)—DISBARMENT PROCEEDINGS—EVIDENCE.

    The rule of Code Cr. Proc. § 399, providing that one accused of crime cannot be convicted on the uncorroborated evidence of an accomplice, does not extend to disbarment proceedings sought because the attorney was guilty of a crime; but the extent to which corroboration is necessary in such a proceeding is for the determination of the court in each case.

    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 75; Dec. Dig. § 53.*]

3. CRIMINAL LAW (§ 511*)—TESTIMONY OF ACCOMPLICE—CORROBORATION.

    In criminal prosecutions, the corroboration of the testimony of an accomplice required to warrant a submission to the jury must be of a character and quality which tends to prove defendant guilty by connecting him with the crime.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1127–1137; Dec. Dig. § 511.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. ATTORNEY AND CLIENT (§ 42*)—DISBARMENT PROCEEDINGS—EVIDENCE.

In disbarment proceedings, it is not necessary to prove that the attorney committed a crime, but it is sufficient to warrant discipline if it appears that he had any direct knowledge that his client sought to recover on perjured testimony and continued the suit, insisting upon her right to a judgment, although he took no affirmative action to induce his client to swear falsely.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. § 42.*]

5. ATTORNEY AND CLIENT (§ 42*)—DISBARMENT PROCEEDINGS—DECEPTION OF COURT.

The acts of an attorney who, having direct knowledge that his client sought to recover on perjured testimony, continued the suit insisting upon her right to judgment, constitute deceit and malpractice within the meaning of Code Civ. Proc. § 67, providing a penalty therefor.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. § 42.*]

6. ATTORNEY AND CLIENT (§ 53*)—DISBARMENT PROCEEDINGS—EVIDENCE.

Where it is claimed that an attorney, having direct knowledge that his client sought to recover on perjured testimony, continued the suit, insisting on a verdict, the corroboration of the testimony of an accomplice necessary to justify finding him guilty of such conduct need not extend to every fact or circumstance which tends to establish his guilt, but is sufficient if it tends to connect him with the offense claimed; and this may be shown by the conduct of the attorney in prosecuting the action.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 53.*]

7. ATTORNEY AND CLIENT (§ 53*)—DISBARMENT PROCEEDINGS—EVIDENCE.

Evidence in a proceeding to disbar an attorney for continuing a suit after he knew that his client sought to recover on perjured testimony held sufficient to corroborate the testimony of an accomplice that he knew, during the trial, that the testimony was perjured, so as to warrant his disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 53.*]

8. ATTORNEY AND CLIENT (§ 42*)—DUTY TO CLIENT.

The obligation of an attorney to his client did not justify him in disregarding his obligation to the court, and continuing a suit based on perjured testimony of his client and others, after he knew that the testimony was perjured.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. § 42.*]

Proceedings on application to disbar Frank M. Hardenbrook, an attorney. Disbarment ordered.

See, also, 126 App. Div. 911, 110 N. Y. Supp. 1131; 131 App. Div. 935, 116 N. Y. Supp. 1137.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

J. Addison Young, for petitioner.

E. C. Crowley, for respondent.

PER CURIAM. The Association of the Bar of the City of New York presented charges against the respondent, to which the respondent interposed an answer. The case was referred to a referee, and upon his report the matter is brought on before the court for such action as it should deem just and proper.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The evidence in relation to the charges was fully gone into before the referee, who has given it as his opinion that at the end of the first day's trial of the case to which attention will be called the respondent knew that Mrs. Woods, whom he represented as counsel, had given false testimony as to his relations with her upon the first day's trial, and that in going forward with the case on the second day he was guilty of unprofessional conduct; the referee at the same time reporting that the charge based upon the fact that this false and perjured testimony was given with the knowledge and procurement of the respondent when the witness testified on the first day of the trial was not sustained, for the reason that he had not found that the respondent knew at the time the witnesses gave their testimony that it was false. But the referee reported that the respondent learned of the falsity of Mrs. Woods' statement after the close of the first day of the trial, that upon the second day of the trial she was recalled, but only to identify a paper, and the respondent went on with the trial and claimed a verdict from the jury, and in that he failed in his duty to the court.

The respondent insists that in a proceeding of this character the court is bound by the rule that in the trial of an indictment for a crime a person cannot be convicted upon the evidence of an accomplice unless it is corroborated. But we think that that is not the rule. At common law there was no absolute prohibition against the conviction of a person charged with a crime upon the uncorroborated testimony of an accomplice, although courts administering criminal justice, having been convinced of the danger of conviction for a crime upon the unsupported and uncorroborated evidence of an accomplice, have refused to allow such a conviction to be sustained. But that rule of law as well as the statute which has been passed to formulate that rule referred solely to criminal cases which would result in the punishment of a person engaged in the commission of a crime. And while in proceedings where disbarment is sought because an attorney has been guilty of a crime we have applied the principle which was formerly applicable in criminal cases that we should not convict an attorney at law in these proceedings of a charge which involved the commission of a crime solely upon the uncorroborated evidence of witnesses who had been guilty of perjury (see Metropolitan Street R. R. Co. v. Oppenheim, 58 App. Div. 510, 69 N. Y. Supp. 524), we do not think that the rule should be applied to the extent that it is required to be applied by section 399 of the Code of Criminal Procedure in the case of a person on trial upon an indictment. The extent to which corroboration in such a proceeding as this is necessary is to be determined by the court in each case. In the case of a criminal indictment the corroboration required, as said by the Court of Appeals, "must be of a character and quality which tends to prove the defendant's guilt by connecting him with the crime. If there is evidence fairly tending to show such connection, so that the conviction will not rest entirely upon the evidence of the accomplice, then the question whether the evidence is a sufficient corroboration to induce the jury to find against the defendant is for it to determine." People v. O'Farrell, 175 N. Y. 323, 67 N. E. 588. In proceedings of this character to disbar an attorney, it is not necessary that it should be proved that the attorney

committed a crime; so in this case it is not necessary to prove that the respondent was guilty of the crime of subornation of perjury. It is sufficient if, taking the testimony as a whole, the respondent was proved to have had direct knowledge that the client for whom he appeared, and in whose favor he asked a verdict, had sought to recover on perjured testimony, and, with such knowledge, continued the prosecution of the action, insisting upon the right of his client to a judgment although he knew that her testimony was false. If this was satisfactorily established, it would seem to follow that he had been guilty of such unprofessional conduct as to require discipline. It is not essential in such a case that the attorney or counsel took affirmative action to induce his client to swear falsely, or, in other words, suborned the perjured testimony; but if an attorney, with knowledge of the fact that the testimony upon which his client is seeking to sustain a claim before the court is false and known to his client to be false, so that his client in giving the testimony is guilty of perjury, insists upon the truth of the testimony and endeavors to procure a verdict in his client's favor, it is certainly deceit and malpractice within the provision of section 67 of the Code of Civil Procedure. And in actions in which the attorney and counsel has a personal interest in the determination of the controversy, being entitled to a substantial part of the recovery in the event of success, the guilt is much greater, for he is seeking to enrich himself by what he knows is false and perjured testimony. The corroboration that justifies the finding of the respondent guilty of such conduct does not necessarily extend to every fact and circumstance which tends to establish his guilt; but if an attorney and counselor at law against whom such charges have been made has an interest in the recovery by reason of a contract with the client who gave the testimony, and proceeded with the trial of a case after knowledge had been brought home to him that his client or other witnesses upon whom he relied to obtain a verdict had been guilty of perjury in the testimony that they had given, he certainly is bound to disclose that fact to the court and withdraw from the case; and corroboration as to the attorney's knowledge can be had from the nature of the relation that had existed between him and his client prior to the trial, as well as the facts actually proved in relation to the trial or what happened during its continuance. What the court should see is that there is independent evidence, either from the respondent himself or from facts established by witnesses other than the giver of the perjured testimony and those directly connected with him, which tends to connect the attorney proceeded against with the giving of such perjured testimony, or with a knowledge of the fact that it was perjured, and was deliberately given to procure a verdict. And where those facts appear from the whole conduct of the respondent, either before or at the trial, there is sufficient corroboration to justify the court in finding the respondent guilty.

In applying these principles, a short statement of the facts established is necessary. It seems that one Mae Woods, who resided at 205 West Forty-Sixth street, New York City, claimed to have been injured on the 27th of June, 1904, while a passenger of the New York City Railroad Company by the car starting while she was about to board it, she claiming that as she had one foot upon the step of the

car she saw the conductor, who stood with his back towards her, give the signal to proceed, that the car started, and she was thrown to the ground and seriously injured. Prior to this time this woman had been living with one Abbot Woods as his wife, she claiming to have been married to him. Previous thereto and since 1896 the respondent had been an attorney and counselor at law, praticing in the city of New York. The respondent had known another attorney named Frank about the same time, and some months before June, 1904, Frank made an arrangement with the respondent under which he was to occupy the respondent's office, and by which Frank had the right to use a vacant desk, put his name on the door, and start in business for himself. The arrangement was that Frank should transact his own business in his own way. This is the testimony of the respondent upon their relations. That condition existed until December, 1904, when the respondent agreed to pay Frank $15 a week and charge it to him as a loan. Before this latter arrangement was made, Frank had asked the respondent on several occasions to try certain cases for him, and the respondent had tried cases in which Frank had appeared as attorney prior to the incidents which will be related. Frank had known Woods, with whom the woman who claimed to have been injured was living as his wife, and who was the conductor on this car at the time of this alleged injury, and Frank received a letter from Woods, stating that he had been a conductor on this railroad and had several cases that he could turn over to Frank. Frank saw Woods and subsequently the woman named, and then commenced an action on behalf of the Woods woman against the New York City Railroad Company to recover damages on account of this alleged injury. This action was commenced on the 14th of July, 1904, in the County Court of Westchester county. After the action was commenced, Frank told the respondent that he had such an action; that he, Frank, wanted the respondent to try the case, and that he would divide any fee that Frank was able to obtain. Some time after this action was commenced, Frank testified that he went to the respondent and obtained from him a check for the money that he had disbursed in relation to the case. Frank stated that the respondent was informed of all the circumstances in relation to the case, of the fact that the conductor of the car upon which the accident happened was the husband of the person who was injured, and of all the facts in connection with their relations to each other. All this the respondent denies. The respondent admits, however, that Frank was an associate in his office, and that he had made an arrangement with Frank by which he was to receive one-half of the fee in the case of this Woods woman. It appeared that this case against the railroad company came on for trial in September, when it was adjourned because of the fact that the railroad company was unable to locate the conductor of the car. It would also seem that Frank, on behalf of this ex-conductor and alleged husband of the Woods woman, had brought an action against the railroad company, also in the County Court of Westchester county, for loss of services in consequence of the accident.

The respondent was examined on his own behalf, and testified that he knew nothing about the suit or the parties until the case came on for trial; that he had no information about them; that he did not even

know how much of a fee Frank was to have if he won the case, or what percentage of the recovery he was to have, although he admitted he was to have half of whatever Frank got. Frank is corroborated by Woods, the ex-conductor and husband of the plaintiff, and by the plaintiff herself, as to the respondent's knowledge of the relations between Woods and the woman, the fact that Frank paid them money during the course of the litigation to enable the woman to go to Providence where she had relatives residing, and other facts which tended to show that the respondent not only knew all the facts and circumstances, but was really the moving spirit in the litigation against the railroad company. The testimony before the referee is quite voluminous. It is impossible to detail all of the facts and circumstances which tend to corroborate the testimony of these parties, but the evidence, we think, taken as a whole, fairly corroborates the testimony of the three witnesses that the respondent really did know of the relations that existed between the woman and the ex-conductor, and that the ex-conductor was the promoter of the action against his late employer. It is certainly most unlikely, with Frank an inmate of his office, with whom respondent had an arrangement to try the case for one-half of Frank's fee, with nothing to suggest that the relations between Frank and the respondent were not entirely friendly, that Frank should not have consulted the counsel who was to try the case about this aspect of it, informed the respondent that the wife of the conductor whose negligence was alleged to have caused the injury was the person suing the railroad company, and consulted him as to what should be done if these facts appeared. It would have to be determined whether to call the conductor himself, produce him in the court-room and offer him as a witness to the defendant, or keep him away altogether. It is certainly most unreasonable that that condition should not have been explained to the trial counsel and his advice as to what course to follow taken. All three parties interested in the claim against the railroad company testified that the respondent did know all about the situation, and this probability with the other testimony I think fairly corroborates the testimony that he had such knowledge.

On the 3d of November, 1904, the case came on for trial in Westchester county before the county judge. The plaintiff in that action appeared by Frank as attorney and the respondent as counsel. She was called as a witness, was examined by the respondent, and testified to the facts which show that her husband, the conductor, was guilty of negligence in starting the car before she had an opportunity to get aboard. Upon cross-examination she identified the conductor as in court. She was asked whether she had ever seen him before that day, and she said "Yes," was asked whether she was acquainted with him and said "No," but that she was introduced to him in the house in which she was then living; that she did not know his name, did not know who introduced them, simply met him in a room full of people; that she had no conversation with him before the alleged accident; that she did not recognize him when she met him on the car at the time of the accident; that at the time of the trial she lived in Forty-Sixth street; that she first saw the conductor after the accident, when

he called on her in the middle of the next week after he had been discharged from the company; that she was in bed when the conductor came; that she next saw him after she had moved to Forty-Sixth street the last week in July; that this one time in April when she was introduced to the conductor was the first and only time that she had seen him before the accident; that she did not know where the conductor was living at the time of the accident; that she was living at the time of the accident with a Mrs. Mack on Avenue A, and had lived there from the time she came to New York until July, when she went to Forty-Sixth street; that she retained Frank to bring the action on the Tuesday of the week following the accident; that Frank had been recommended to her by a friend. She was also asked whether she was related to the conductor in the case, to which she said: "No, sir; most assuredly not." She testified that she had never lived in the Forty-Sixth street house before the last week in July after the accident; that it was not a fact that the conductor was living in the same house that she was living in and had been living there since the accident; that she did not know the conductor was living in the house at the time of the accident, and did not know that the conductor was then living at the same house. On the following day, the plaintiff having rested, the conductor was called by the defendant. He testified that he was in the employ of the defendant under the name of W. T. Gardiner; that he did not occupy the same room with the plaintiff in the Forty-Sixth street house at any time; repeatedly testified that he had never lived with the plaintiff in the action as his wife, and never called her his wife. Upon cross-examination the respondent got from him testimony which tended to sustain the plaintiff's claim of negligence. On the second day of the trial this woman was recalled, but she in no way modified her previous positive testimony. The jury found a verdict for the defendant, and there resulted the subsequent indictment of the woman and the conductor for perjury, to which they pleaded guilty. The conductor served out his term. The woman was pardoned. Frank, the attorney, was also indicted for subornation of perjury and convicted, but on appeal the judgment of conviction was reversed upon the ground that the indictment was defective in not alleging correctly the testimony which the plaintiff gave which was false; the court stating that it was unfortunate that the indictment as drawn did not meet the case. This respondent was also indicted for subornation of perjury upon the evidence of this woman, the conductor, and Frank, but the indictment was dismissed upon the ground that these three persons were accomplices, and that their testimony was not corroborated. And these proceedings were subsequently commenced.

After the court had adjourned on the first day of this trial, when this woman who claimed to have been injured had testified with great positiveness that she had never met the conductor but once, had never lived with him, and was not related to him in any way, Woods, the conductor, and Frank, the attorney, met the respondent in the Grand Central Depot on his return from White Plains where the trial had been had. Frank and Woods both expressed great concern over the course that the trial had taken, stating that they were satisfied that

the company had found out the relations between this conductor and the plaintiff in the action, and suggested that the case had better be withdrawn. To that the respondent refused to consent, stating that he would protect them, that the company really did not know anything about the relations between these parties, and to go on with the case. The respondent admits that he saw Frank and the conductor in the depot, but denies the conversation. The referee is satisfied that at that time the respondent did have knowledge of the fact that these parties had committed perjury, and that, notwithstanding such knowledge, the respondent actually went on with the trial, cross-examined the defendant's witnesses, went to the jury insisting on his right to recover a verdict, and, as before stated, the referee has found that this was a violation of the respondent's professional obligations.

We have examined this testimony and recognize fully the criticism that the referee has made as to the reliability of the testimony of this man Frank and the man and woman who were his clients. Considering the testimony together with the strong probabilities of the case, the relations between Frank and the respondent, and the respondent's own testimony on the Frank trial for subornation of perjury, the fact that the respondent knew perfectly the relations between these parties and the relation of Frank to them long before the trial, that he was acquainted with the fact that the plaintiff in that action was suing for an accident alleged to have been sustained on a car of which her husband or a man calling himself her husband was the conductor, and that the question as to the conduct of the trial under those circumstances was talked over and the respondent's advice asked and followed as to the method of conducting the trial under these circumstances, we are satisfied of the truth of this general charge. It is quite probable that this would not suffice to convict the respondent of subornation of perjury, that more than mere knowledge by a lawyer examining a witness in court that the witness is committing perjury is necessary to justify a conviction of that crime; but, when the question is presented as to what is sufficient professional misconduct to justify the disbarment of an attorney and counselor of this court, a very different question is presented. We have not gone into the details of this testimony or stated the facts which have been proved and which were admitted, and which of themselves seem to us to corroborate the fact that this respondent did have knowledge of the relations between this man and woman, and knew when he examined her as a witness that she was committing perjury. But we think no one can read this testimony and consider the probabilities of the situation without being satisfied as to that fact.

The question is presented as to the punishment that should follow. There can be no question but that the offense is a serious one, involving as it does the relation of an attorney and counselor at law to the court of which he is an officer, and at the same time the obligation of an attorney to his client. Assuming that his professional obligations to his client would justify his not revealing to the court the facts that he had acquired from his client during the existence of the relation, the obligation to his client did not justify him in deceiving the court

121 N.Y.S.—17

or continuing to prosecute a claim which he knew was based upon perjured testimony. Much less would it justify him in producing his client as a witness, and insisting upon her right to recover when he knew that her testimony was knowingly false. By proceeding with the trial after having become aware of the fact that it was based upon perjured testimony, the attorney made himself a party to the attempted fraud upon the court and the defendant. The fact that these contingent fees are recognized as lawful places the attorney in the position of being himself interested in the recovery, and, if possible, increases his obligation to be frank with the court, and not to join in any scheme by which the amount which he will personally receive would be increased.

We have given to the question of punishment most serious consideration, and feel that we are compelled to impose the extreme penalty of disbarment.