Bobby Jean McKISSICK, Appellant,

v.

UNITED STATES of America, Appellee.

No. 23669.

United States Court of Appeals
Fifth Circuit.

June 30, 1967.

Robert E. Coburn, Jr., L. H. Walden, Montgomery, Ala., for appellant.

Ben Hardeman, U. S. Atty., J. O. Sentell, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before RIVES, COLEMAN and GODBOLD, Circuit Judges.

COLEMAN, Circuit Judge.

Bobby Jean McKissick was convicted by a jury on a two count information charging violations of §§ 331 and 333, Title 21, U.S.C. (violation of Food, Drug, and Cosmetics Act). He was sentenced to imprisonment for consecutive terms of one year each. On the record before us, the judgment of the District Court must be vacated and remanded for further proceedings as herein set forth.

Appellant was convicted on the testimony of an Inspector of the United States Food and Drug Administration that appellant, at his drug store in Montgomery, Alabama, on December 19, 1963, sold him dl-Amphetamine Sulfate tablets

and on January 21, 1964, sold him a number of SYNDROX Methamphetamine Hydrochloride tablets, both sales being without a prescription therefor from one licensed to administer the drug.

The information was filed December 28, 1964. There was a continuance in the Spring of 1965. A trial was begun on November 23, 1965, which ended in a mistrial, as will be discussed later. The trial from which this appeal was taken commenced April 19, 1966.

Of the seven errors assigned for the reversal of this conviction, we are convinced that only three justify discussion.

1. The denial of a continuance in April, 1966.

It appears undisputed in this record that appellant was not notified finally of the withdrawal of his original counsel until February 17, 1966. This was in the form of a letter and appellant was warned that he would be subject to being tried again from and after April 18, 1966. The record is silent as to what appellant did, if anything, about securing other counsel between February 17 and April 1. In any event, he retained present counsel on April 1. On April 5 new counsel moved for a continuance until the next regular term on the ground that they had been unable to obtain a transcript of the former trial, that the court reporter said it could not be furnished until April 18, and that additional time was necessary adequately to prepare for the defense of the case. The trial was scheduled to begin April 19. The District Judge denied this motion for continuance on the ground that there had been a prior continuance in the Spring of 1965, that there had been a mistrial in November, 1965 (describing what prompted that mistrial, R. 183), that the transcript of McKissick's testimony in the earlier trial had been supplied counsel as of April 6, and that the entire transcript of the other proceedings would be made available not later than April 14. At the actual trial only three witnesses testified, they being the Inspector and two employees in the drug store.

Again, it is well settled that motions for continuance are addressed to the sound discretion of the trial judge. His action thereon will not be reversed unless there is an abuse of discretion. In view of the considerations recited by the trial court in denying the continuance, remembering that there was only one witness for the prosecution and only two for the defense, we are unable to say that there was an abuse of discretion in this instance, cf. Joseph v. United States, 5 Cir., 1965, 343 F.2d 755, cert. denied, 382 U.S. 828, 86 S.Ct. 65, 15 L.Ed.2d 73; Ray v. United States, 5 Cir., 1965, 352 F.2d 521.

2. Allegedly improper closing argument.

It is next contended that in his closing argument the United States Attorney improperly commented upon McKissick's failure to testify in his own defense. The allegedly offending comment was as follows:

"I would be willing to bet that this is the first time that you have ever heard of a defense *by alibi* by inference * * *. There hasn't been one witness from that witness stand to tell you where McKissick was, altho they had witnesses up there."

"You know and I know that if a man had gone somewhere else on that day, or either of those days, somebody would have seen him leave; somebody would have seen him go somewhere; somebody would have seen him come back * * *."

We recently discussed this problem in Davis v. United States, 357 F.2d 438, 441, April 18, 1966. Prior precedents in this Circuit are there collated. We said:

"The facts and circumstances of each case must be carefully analyzed to determine 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'"

The employees of this appellant testified to their activities in the drug store and its method of operation so as to raise a reasonable doubt, if the jury had chosen to see it that way, as to whether McKissick was in the store on the dates of the alleged sales. They both declined to testify of their own recollection that he was, in fact, absent. We think the argument of the prosecutor was fairly directed to this line of testimony and that the jury would know he was simply discussing what the lady employees had said.

The Inspector testified that he dealt only with McKissick. Obviously if the prosecutor had said no one contradicted what the Inspector said about the sales then we would have a different case.

3. The question of former jeopardy, raised for the first time on appeal, growing out of the mistrial declared November 24, 1965.

As previously indicated, the first trial in this prosecution was concluded by a court ordered mistrial on November 24, 1965. According to the record before us, McKissick took the stand in his own behalf on November 23. At the conclusion of his testimony, the Court dismissed the jury for the day (R. 75). He then asked McKissick if he had been sworn before he started testifying. The witness responded that he had. The Court then propounded forty-one questions in the nature of cross-examination. Upon the completion of this interrogation, the Court spoke as follows:

"[R. 85]. There is the worst case of perjury in this case I have ever seen since I have been on the Bench; the drug agent or this witness, one, did it. I don't know who; I don't know which one of them did it."

When Court convened the next morning, trial counsel for McKissick requested a conference in chambers. The record does not reveal that McKissick was present. The record recites:

"IN CHAMBERS, with, in addition to the Court, there being present Mr. Hardeman, Mr. Sentell [prosecuting counsel], Mr. Lowery, and Mr. Ira DeMent [defense counsel]."

Counsel for McKissick, Mr. Lowery, then made the following statement:

"I would like for the record to show that the defendant, McKissick, Bobby Jean McKissick, called me by telephone last night about nine o'clock, and after a conversation admitted the fact that he had perjured himself in the trial yesterday, which was November 23; and under those circumstances, I do not feel that I can continue to represent him under these circumstances. And I—therefore, I believe it is proper that I ask the court for a mistrial; I believe that would be proper."

The Court then said:

"And I don't see that I have any alternative except to declare a mistrial in the case, because that leaves him without counsel insofar as this case is concerned."

Upon returning to the courtroom, the Court then made the following statement:

"Now, to the jurors in the case of the United States against Bobby Jean McKissick; for the reasons stated to the court, which have been made a part of the record in this case, it is necessary that the court declare a mistrial in the case, and the trial of the United States against Bobby Jean McKissick cannot and will not continue at this time. Let me see the court file. Counsel for the defendant, McKissick case, are excused; the defendant is excused until further notice."

It is not shown in this record that McKissick was present at or was ever informed of the above statement made by his own counsel. As already pointed out, the record does not reveal his presence at the conference in chambers, nor does it reveal any reason for his absence. Obviously, he was not informed in open court as to the reason for the mistrial. There is nothing to indicate that being fully advised of his rights he intelligently waived them. The record does not show that he had an opportunity to confront

or to cross examine. Apparently, he had no opportunity to explain or deny. For the first time, on this appeal and not in the Court below, new counsel now contend that granting the mistrial under these circumstances was legally improper and the defendant is now entitled to the constitutional protection against second jeopardy for the same offense.

The first difficulty in this contention, of course, is that (at least until the adoption of the Federal Rules of Criminal Procedure) it was well settled in the federal decisions that double jeopardy was a defense which had to be pleaded specially; it could not be raised for the first time by a motion for a new trial or on appeal, cf. Brady v. United States, 8 Cir., 1928, 24 F.2d 399, and the wealth of cases therein cited. In 1959, long after the adoption of the Federal Rules of Criminal Procedure, in United States v. Hoyland, 264 F.2d 346, cert. denied, 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed.2d 83, the Seventh Circuit held to like effect, citing *Brady* and other cases. In *Hoyland,* however, there had been a plea of guilty. The Court quoted what had been said in Caballero v. Hudspeth, 10 Cir., 1940, 114 F.2d 545:

> "The right to not be placed in jeopardy twice for the same offense is a personal right. It is an immunity granted to the witness by our constitution, and may be waived. The plea of guilty by the defendant constitutes a waiver of this right. At no stage of the proceedings did he assert this constitutional guarantee. The defense may not now be raised for the first time by writ of habeas corpus."

*Hoyland* did not discuss Rule 12, Federal Rules of Criminal Procedure, which did away with all pleas in criminal prosecutions other than guilty, not guilty, and nolo contendere. Obviously, the defense of former jeopardy at the April, 1966,

trial could have been raised by motion, and possibly could have been raised by introducing evidence under the plea of not guilty.[1]

In any event, the question of double jeopardy was not raised below in any shape, fashion, or form.

■ The general rule, and the proper rule, is that in criminal and civil cases the appellate court will not consider matters which were not raised or considered in the court below, Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. Cf. the multitude of cases annotated in Note 25, 28 U.S.C.A. § 2106.

By § 2106 of 28 U.S.C.A., however, this Court, and every other federal appellate court, is charged with the broad power on appeal to "require such further proceedings to be had as may be just under the circumstances".

■ As was said in Nuelson v. Sorensen, 9 Cir., 1961, 293 F.2d 454, 462:

> "There is, however, no rigid and undeviating judicially declared practice under which courts of review invariably and under all circumstances decline to consider all questions which have not previously been specifically urged. Indeed there could not be without doing violence to the statutes which give federal appellate courts the power to modify, reverse or remand decisions 'as may be just under the circumstances'. 28 U.S.C.A. § 2106. Exceptional cases or particular circumstances may prompt a reviewing court, where injustice might otherwise result or where public policy requires, to consider questions neither pressed nor passed upon below. The power to raise and decide questions sua sponte is, however, to be exercised sparingly and with full realization of the restrictions and limitations inherent in its employment.

---

[1]. See United States v. H. E. Koontz Creamery, Inc., D.Md., 232 F.Supp. 312; 8 Moore's Federal Practice & Procedure ¶ 12.03(2); 4 Barron & Holtzoff, Federal Practice & Procedure § 1981; 3 Orfield, Criminal Practice Under the Federal Rules §§ 12:51, 12:84, pp. 212 and 243. And see particularly the Advisory Committee Notes to Rule 12 appearing in Title 18 U.S.C.A. on the Federal Rules of Criminal Procedure at pages 312 and 313.

"Rather than consider the matter sua sponte, of course, the appellate court may note the existence of the unargued, undecided question and remand the case to the lower court. This makes the decision on the matter one reflecting the consideration of a trial court and the counsel in the case [citing cases]".

See, also, Frieze v. West American Ins. Co., 8 Cir., 1951, 190 F.2d 381; E. I. DuPont De Nemours & Co. v. Cudd, 10 Cir., 1949, 176 F.2d 855.

On the facts and circumstances of this unusual case we feel that the case must be remanded to the District Court for specific decision on issues now to be discussed.

There are three aspects to the problem that must be explored:

(1) sufficiency of the ground for declaring a mistrial as measured against the right not to be placed twice in jeopardy for the same offense; (2) McKissick's right to confront and cross-examine witnesses; (3) McKissick's right to be represented effectively by counsel.

■ Turning to the first of these, there can be no doubt that McKissick was placed in jeopardy when the jury was sworn to try him on November 23, 1965. In the absence of a failure to agree on a verdict, the jury could not without McKissick's consent be discharged except in a case of manifest justification or necessity; action of the trial judge in finding such justification or necessity is reviewable only for abuse of discretion. United States v. Perez, 1824, 9 Wheat. 579, 580, 22 U.S. 256, 257, 6 L.Ed. 165; Wade v. Hunter, 1949, 336 U.S. 684, 689, 690, 69 S.Ct. 834, 93 L.Ed. 974; Green v. United States, 1957, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199; Downum v. United States, 1963, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100; 22 C.J.S. Criminal Law § 258, p. 669 et seq.

"The rule announced in the Perez Case has been the basis for all later decisions of this Court on double jeopardy. It attempts to lay down no rigid formula. Under the rule a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." Wade v. Hunter, supra, at 336 U.S. 690, 69 S.Ct. 838, 93 L.Ed. 979. The Perez rule, we feel has particular applicability to the present case:

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office." United States v. Perez, 9 Wheat. 579, 22 U.S. 256, 6 L.Ed. 165.

The Supreme Court in Wade v. Hunter, supra, phrased application of the double jeopardy rule this way:

"The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. * * * What has been said is enough to show

that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgements." 336 U.S. at 688, 69 S.Ct. at 837, 93 L.Ed. at 978.

If appellant told his attorney that he had committed perjury, that offense was in effect a continuing one so long as allowed to remain in the record to influence the jury's verdict. Whether appellant did or did not specifically authorize or direct his attorney to make it known to the court, or even directed it not be made known, he could not abrogate the attorney's discharge of his professional, ethical and public duty to report it. The statement was good cause to the attorney to withdraw from the case, and he would have been subject to discipline had he continued in the defense without making a report to the court. The attorney not only could, but was obligated to, make such disclosure to the court as necessary to withdraw the perjured testimony from the consideration of the jury. This was essential for good judicial administration and to protect the public.[2]

If the appellant told his attorney he had committed perjury, the court, when it became aware of what appellant had said, did not abuse its discretion by finding this a case of manifest justification or necessity. Insofar as sufficiency of ground for mistrial is concerned, pretermitting at this point the factors of confrontation of witnesses and representation by counsel, the appellant had no constitutional right, overriding the public interest, to have his case determined by a tribunal whose processes he had himself thus frustrated and abused. In this connection it should be noted that the court was acting on the basis of a report to it by an attorney, who is an officer of the court and whose integrity the court itself ordinarily is in position to judge, and the alternatives to mistrial were themselves fraught with difficulties and possible errors.

Turning now to the remaining questions, confrontation of witnesses and right to counsel, a defendant is entitled to confront witnesses, cross-examine, and give testimony, Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Rule 43 F.R.Crim.Proc. We do not know whether appellant was present when his attorney reported to the court, and if not whether his absence was voluntary or waived by him.

Also an accused constitutionally is entitled to be effectively represented by counsel at every critical stage of a criminal proceeding. Hamilton v. State of Alabama, 1961, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114; White v. State of Maryland, 1963, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193; Escobedo

---

2. Drinker, Legal Ethics 141 (1953): "A lawyer learning of fraud practiced by his client on a court * * * which the client declines to disclose must inform the injured parties, and withdraw from the case, despite Canon 37 [of the Canons of Professional Ethics of the American Bar Association, this Canon covering the lawyer's duty to preserve his client's confidence]." See also Canon 29, which provides in part: "The counsel upon the trial of cause in which perjury has been committed owe it to the profession and to the public to bring the matter to the knowledge of the prosecuting authorities." We feel this duty may be equally discharged by disclosure to the court itself. Disciplinary measures have been successfully taken against attorneys who have continued with a civil case knowing that their clients had presented perjured testimony. In re Hardenbrook, 135 App. Div. 634, 121 N.Y.S. 250 (Sup.Ct., App. Div., 1909), aff'd. per curiam 199 N.Y. 539, 92 N.E. 1086 (1910). In re King, 7 Utah 2d 258, 322 P.2d 1095 (1958) the court commented, "We cannot permit a member of the bar to exonerate himself from failure to disclose known perjury by a * * * statement that * * * he had a duty of nondisclosure so as to protect his client which is paramount to his duty to disclose the same to the court, of which he is an officer, and to which he in fact, owes a primary duty under circumstances such as are evidenced in this case." 322 P.2d at 1097. But compare Gold, Split Loyalty: An Ethical Problem for the Criminal Defense Lawyer, 14 Clev.-Mar.L.Rev. 65, 69–70 (1965).

v. State of Illinois, 1964, 378 U.S. 478, 491, 492, 84 S.Ct. 1758, 12 L.Ed.2d 977. The right to counsel involves two subsidiary questions—the report by the attorney to the court, and the motion by the attorney for a mistrial. As to the report, we do not know whether it was made on the authorization or direction of McKissick, without it, or in violation of it. The attorney reported to the court and submitted himself to the court's orders as to what should be done. The court, had it chosen, could have directed him to continue to represent appellant. If appellant did not authorize or direct that the report be made he nevertheless is subject to the duty of the attorney to report (if he made the statement to the attorney), and he could not by so telling the attorney (if he did) create a right to have a new attorney present when his then attorney reported to the court what he was either authorized or bound to report and placed himself at the court's instructions. If it is now determined that McKissick made the statement to the attorney there has been no deprivation of counsel by the making of the report. If it is determined he did not make the statement the attorney was, in reporting to the court, acting in a manner so adverse to McKissick's interests that McKissick at that time was deprived of effective counsel.

 As to the motion for mistrial by the attorney, this was outside the scope of the attorney's duty to report to the court. It was a matter of such importance that the client should be consulted unless expressly or impliedly authorized by him. The attorney in making the motion, though with the most commendable of motives, was then acting in a manner so adverse to McKissick's interests that McKissick at that time was deprived of effective counsel. The making of the statement to the attorney (if made) would not alone be implied authority to the attorney to move for mistrial.

The case is remanded for hearing and findings on the following issues:

—Whether McKissick did tell his attorney that he had perjured himself.

—Whether McKissick expressly or impliedly authorized his attorney to move for a mistrial.

—Whether McKissick was absent from the conference in chambers. If absent, whether his absence was voluntary and whether he otherwise waived the right to be present.

—If absent, and his absence was neither voluntary nor waived, whether it is clear beyond a reasonable doubt that he was not injured by such absence.[3]

 Under the requirements of effective assistance of counsel, the judgment of conviction must be set aside and appellant discharged if it is determined he did not make the statement to the attorney, or if the attorney moved for a mistrial without express or implied authority from McKissick.

 Under the requirements of right to be present and to confront witnesses, if appellant was absent from the proceedings in chambers and neither waived the right to be present nor consented to the proceedings being held in his absence, the conviction must be set aside and appellant discharged, unless it is clear beyond a reasonable doubt that he was not injured by such absence;[4] but appellant will not be entitled to relief on this ground if it is determined that he was present at the proceedings in chambers or waived his right to be present or consented to the proceedings going forward without his presence or it is clear beyond a reasonable doubt that he was not injured by such absence.

The court also should make inquiry whether the presence, authority and actions of Mr. DeMent, who was not the attorney who made the report to the court but was present at the proceed-

3. Chapman et al. v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (Feb. 20, 1967).

4. See note 3, supra.

ings in chambers, fulfilled the requirements of effective assistance of counsel.

While we have attempted to give specific directions the district court is not limited from such further scope to its hearing as may seem to it appropriate so long as consistent with this opinion.

For further proceedings not inconsistent herewith, the Judgment of the District Court is

Vacated and remanded.