UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose Elibardo LERMA,
Defendant-Appellant.

No. 81–2052
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Unit A

Sept. 30, 1981.

L. Aron Pena, Edinburg, Tex., for defendant-appellant.

Anna E. Stool, John M. Potter, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

AINSWORTH, Circuit Judge:

Jose Elibardo Lerma was indicted and convicted of conspiracy to possess marijuana with intent to distribute, possession of marijuana with intent to distribute, and using a communication facility to accomplish these offenses, each a violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 841(a)(1), 843(b), 846. Lerma appeals, arguing that certain evidentiary rulings, the insufficiency of the evidence and flaws in the indictment warrant reversal of his conviction. Finding no reversible error among these asserted defects, we affirm.

Lerma was implicated in a sale of over thirteen hundred pounds of marijuana by James Dickenson, who was arrested with the marijuana at a border checkpoint early on May 6, 1979. According to Dickenson's testimony, approximately two months earlier Dickenson and Ronald Spicer, both residents of Camden, Arkansas, had enlisted the aid of Tirzo Hernandez Garcia in a scheme to buy marijuana.[1] Garcia gave them the telephone number of a source for marijuana, whom he believed was named Pedro Villarreal. Spicer called the number and told Dickenson that someone named Joe had instructed them to come to Harlingen, Texas. At a Harlingen motel, Dickenson and Spicer met two men, one whom Dickenson later identified as the appellant Jose Elibardo Lerma. A sale of marijuana was discussed, but not consummated because Lerma lacked the three hundred pounds Spicer then wished to acquire. Spicer and Dickenson returned to Arkansas without the marijuana.

Several weeks later, in April 1979, Dickenson testified that he was approached by Spicer and engaged to drive a truckload of marijuana from Harlingen to Camden for five hundred dollars. Dickenson accompanied Spicer to Harlingen, where they stayed for approximately twelve days. During this period, they were visited twice by a man Dickenson later identified as Lerma. A sale of eight hundred pounds of marijuana was discussed during one of these meetings. Subsequently, Spicer rented a truck and loaded it with old furniture. The truck was then turned over to Lerma and a companion. Five hours later, Spicer and Dickenson were led by Lerma to a secluded area where the truck was parked. There, Spicer paid Lerma fifty-four thousand dollars for over thirteen hundred pounds of marijuana that had been loaded in the truck. The transaction completed, Dickenson drove the truck north while Spicer led the way in his automobile. Dickenson was arrested at the Sarita checkpoint after the truck was stopped and the marijuana discovered.

Dickenson pled guilty of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Initially, he did not implicate Spicer, Garcia, or Lerma. While incarcerated, Dickenson notified federal agents that he wished to provide them with information because his family had been threatened. From photographs, Dickenson identified Lerma as the man who had sold Spicer the marijuana. He also identified Lerma in court. The government did not promise Dickenson any benefit in exchange for his cooperation.

Ronald Spicer and Lerma were indicted for the same three offenses, but Spicer's trial was delayed while his competency to stand trial was determined.

---

1. Tirzo Hernandez Garcia was indicted for conspiracy to possess marijuana with intent to distribute and possession of marijuana with intent to distribute. He was tried jointly with Lerma and acquitted.

At trial, the government produced managers of three Harlingen motels who verified that Spicer had registered at their motels during the periods Dickenson testified that he and Spicer were in Harlingen. The records manager of a truck rental firm testified that Spicer had rented the truck on May 1, 1979. The government also proved the making of forty-six long distance telephone calls to Lerma's residence [2] from Spicer's home or place of business between March and October of 1979. Five others were placed by Spicer to Lerma's place of employment. Thirty-seven calls were made from Lerma's residence telephone to Spicer's residence, and twelve others were made to his place of business. After Lerma's indictment, a warrant was issued and he was arrested by a government agent. Lerma's counsel objected at trial when the arresting agent was asked to describe what he found on Lerma's person. The objection was overruled and the agent testified that he had discovered a gun and several identifying papers. The agent also testified that after being warned of his constitutional rights, Lerma had given the agent certain personal information, including his telephone number.

Lerma argues that mention of his possession of the gun was irrelevant and requires reversal of his conviction. His claim must be viewed within the context of the trial court's broad discretion to determine the relevancy of proffered evidence. Such discretion is reviewable only for abuse. *United States v. Wasman*, 641 F.2d 326, 329 (5th Cir. 1981); *United States v. Welliver*, 601 F.2d 203, 210 (5th Cir. 1979). Evidence admitted by the trial court of the search incident to Lerma's lawful arrest established a logical predicate to the admission of the identifying papers seized and personal information given by Lerma. Failure to prove the arrest would have left the jury to speculate how this evidence had been obtained. Lerma's possession of the gun was merely one of the circumstances of the arrest; the gun itself was not intro-

duced into evidence. The trial court did not overstep the bounds of its discretion by permitting evidence of the gun's seizure to be heard by the jury.

Lerma further argues that the putative error in mention of the gun was compounded by the agent's opinion testimony that carrying the weapon violated state law. This opinion, however, was elicited only after persistent cross-examination by Lerma's lawyer. Any error in the admission of statements concerning the legal consequences of carrying a gun was invited by his attorney's questioning. The accepted rule regarding statements procured in this manner is that "where the injection of allegedly inadmissible evidence is attributable to action of the defense, its introduction does not constitute reversible error." *United States v. Martinez*, 604 F.2d 361, 366 (5th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980) *quoting United States v. Doran*, 564 F.2d 1176, 1177 (5th Cir. 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). Having deliberately pursued a strategy that created a potential error at trial, Lerma cannot seek relief from the untoward results of that strategy on appeal.

Furthermore, any conceivable prejudicial effect of mention of the gun was effectively blunted by the judge's special caution to the jury that "the incident involving the gun is not involved in this case . . . That is an incidental matter that took place at the time he was taken into custody . . . you don't use it against him." *See United States v. Macker*, 608 F.2d 223, 227 (5th Cir. 1979) (curative effect of cautionary instruction regarding gun).

Lerma also protests that the arresting agent's testimony that he acted under a post-indictment warrant should have been excluded. Lerma theorizes that jurors would prejudicially infer guilt from issuance of an arrest warrant. His claim is without merit, however, since a warrant or the existence of an established exception to

---

**2.** The phone in Lerma's residence apparently was registered in the name of his brother's wife, Tomasa Villarreal, who lived in a house on the lot adjacent to Lerma's residence.

the warrant requirement is a prerequisite to the lawfulness of an arrest and search. The trial court acted properly in permitting the government to establish a foundation for the admission of Lerma's papers and post-arrest statements. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Lerma next urges that the evidence is insufficient to support a conviction because Dickenson's testimony was unworthy of the jury's belief as a matter of law. Dickenson admitted once burning a house for Spicer to collect insurance proceeds and selling and using various drugs. He also admitted that he was intoxicated when he pled guilty to possession of marijuana with intent to distribute and that he lied to the judge who accepted his plea. Defense counsel was allowed to read from the transcript of Dickenson's plea proceedings during his closing argument.

■ In testing the sufficiency of evidence to support a conviction, we view the evidence in a light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The relevant standard is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The jury is the ultimate arbiter of the credibility of witnesses. *United States v. Cravero,* 530 F.2d 666, 670 (5th Cir. 1976). Whether Dickenson testified truthfully was an issue for the jury. Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law. *United States v. De Los Santos,* 625 F.2d 62, 65 (5th Cir. 1980); *United States v. Palacios,* 612 F.2d 972, 973 (5th Cir. 1980); *United States v. Cravero, supra,* 530 F.2d at 670. Despite the attack on his credibility, the jury evidently found Dickenson's testimony to be trustworthy.

Dickenson testified in detail to the complex series of events that culminated in the sale of marijuana. He identified Lerma as one of the sellers. Hotel, telephone and truck rental records tended to corroborate parts of Dickenson's story. Telephone records also linked Lerma to the scheme, confirming the existence of regular communication during the relevant period between his residence and workplace and Spicer's residence and business. With this evidence before it, the jury could rationally conclude beyond a reasonable doubt that Lerma was guilty of each offense charged.

■ Lerma moved for a declaration of mistrial after the prosecutor, in response to an inquiry from the trial judge, explained that evidence of the arresting agent's warning to Lerma of his constitutional rights was introduced as a foundation for Lerma's subsequent "admissions." The prosecutor was referring to the personal information Lerma gave the agent. Lerma asserts that the motion to declare a mistrial was improperly denied because no evidence of admissions of guilt was adduced. Since the term "admission" can apply to a wide array of utterances by a party opponent, including Lerma's statements of personal history, Fed.R.Evid. 801(d)(2), the prosecutor's statement was accurate. Ideally, the prosecutor might have been more circumspect in his choice of language to defeat any prospect of jury confusion or prejudice. But his use of the term "admissions" once during the entire trial does not warrant reversal of the denial of Lerma's motion for mistrial, particularly in light of the court's admonition to the jury "not to look at it [Lerma's statements] as an admission in the sense of the word."

■ Finally, Lerma urges that the omission of his first name in one count of the indictment and the inclusion of an alias in all three counts render it so fundamentally defective that his conviction should be overturned. Lerma, however, failed to object to the defects he now portrays as fundamental until after the close of the prosecution's case. Lerma also incorporated the alias in his pretrial motions. Rule 12(b)(2) of the Federal Rules of Criminal Procedure requires that objections based on defects in

an indictment be raised prior to trial. Failure to comply with this requirement results in waiver of the objection. *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); Fed.R.Crim.P. 12(f). No showing of cause for relief was made, nor are the defects so pervasive that the indictment fails to charge an offense. *United States v. Trollinger*, 415 F.2d 527, 528 (5th Cir. 1969); Fed.R.Crim.P. 12(b)(2).

Even if the objection were timely, its almost trifling character falls far short of justifying reversal of the conviction. The alias included in the indictment was later excised by the trial judge. The omission of Lerma's first name in one count of the indictment, where his full middle and last name were fully stated in no way deprived him of notice of the charge or prejudiced his defense. *United States v. Rich*, 518 F.2d 980, 986 (8th Cir. 1975) *cert. denied*, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976).

AFFIRMED.