**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jack GRAVES, Defendant-Appellant.**

No. 80–2285.

United States Court of Appeals, Fifth Circuit.

March 8, 1982.

Jose Vela, Jr., Laredo, Tex., David D. Aufhauser, F. Lane Heard, III, Washington, D. C., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., John P. Smith, Asst. U. S. Atty., Brownsville, Tex., for the U. S.

Before GARZA and RANDALL, Circuit Judges.[*]

GARZA, Circuit Judge:

After a jury trial in the Southern District of Texas, Jack Graves was convicted of conspiring to violate 18 U.S.C. §§ 2312 and 2314 in violation of 18 U.S.C. § 371.[1] Graves and two of his confederates, Jerry Blackwell and Idelfonso Perez, Jr., conspired to steal several trucks from the Dub Shaw Ford dealership in Fort Worth, Texas, of which Graves was the general sales manager, transport those trucks to Laredo, and then resell them in Mexico. Sentenced to five years imprisonment, Graves appeals the judgment of the district court. We affirm.

In late February or early March of 1980, Graves called Blackwell, whom he had known for more than nine years, and asked Blackwell to meet him at the Dub Shaw Ford dealership. At this meeting, Graves invited Blackwell to participate in a scheme to steal trucks from the dealership and resell them in Mexico. Blackwell, an expert at "hot wiring" a vehicle, was to drive the trucks from Fort Worth to Mexico via El Paso and then resell them there. Although Blackwell was receptive to Graves's idea, the scheme was never carried out because Graves and Blackwell could not agree on Blackwell's share of the proceeds.

---

[*] Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. Section 371 provides, in part:

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Undaunted by this impasse, Graves called Blackwell again to interest him in a similar operation. Like the first plan, this scheme involved the theft of trucks in Fort Worth for resale in Mexico. This time, however, Blackwell was only to steal the trucks in Fort Worth and transport them to Laredo. Graves himself would make arrangements for their transportation to and resale in Mexico. Graves promised Blackwell one-third of the resale price which he estimated would be between $2,000 and $2,500 per truck. Blackwell agreed. Graves and Blackwell also agreed to repeat this operation and to deliver three trucks to Laredo each time.

Blackwell talked with Graves again during the evening of March 7. The following morning, Blackwell stole three trucks and arranged transportation for them and himself to Laredo. He transported two of the trucks on a carrier he had bought for that purpose and hired a driver to deliver the third. Blackwell and his driver arrived in Laredo later that day and parked the trucks in a shopping mall parking lot. Blackwell then checked into a motel and called Perez. Blackwell had never met Perez but had received Perez's telephone number from Graves. Graves knew Perez because Perez had previously worked for Dub Shaw Ford, and called Perez before Blackwell arrived in Laredo to advise him that he would receive three stolen trucks. After receiving Black-

well's call, Perez and his cousin, Oscar Vela, went to Blackwell's motel room and introduced themselves. During this conversation, Perez informed Blackwell that he could not pay for the trucks until the following Monday. After talking with Perez, Blackwell called Graves to be sure that Perez could be trusted until Monday, and then left the motel with Perez and Vela for the parking lot. Once there, Blackwell gave Perez the keys for the trucks. Perez inspected the trucks and took possession of them from Blackwell. Blackwell then returned to his motel room and Perez and his cousin drove one of the trucks away. All three were apprehended by Laredo police shortly thereafter.

## SUFFICIENCY OF THE INDICTMENT

Graves challenges the sufficiency of the indictment on three grounds.[2] First, he contends that the indictment failed to state an offense because it neglected to mention that he knew that the trucks were stolen, an essential element for a Dyer Act violation. Second, the indictment failed to offer him adequate notice of the specific Dyer Act provision he was alleged to have violated. Finally, as a variation on his first argument, he also contends that the indictment was deficient because it omitted the fact that the trucks had a value of at least $5,000, a necessary element of a Dyer Act violation. None of these contentions has merit.

---

**2.** Before the end of trial, the district court struck portions of the indictment not relating to the defendant. The remaining portions of the indictment, as read to the jury, stated:

THE GRAND JURY CHARGES:
COUNT 1

That from on or about January 23, 1980, to on or about March 19, 1980, in the Southern District of Texas, and elsewhere, TIMOTHY MICHAEL GRAUSTEIN, VELMA LINDA GRAUSTEIN, JERRY JACKSON BLACKWELL, KELLY MARK JONES, RONALD EUGENE HENDRICK, IDELFONSO PEREZ, JR., OSCAR VELA, and JACK GRAVES, hereinafter called defendants, and Ramiro Rios, a co-conspirator but not a co-defendant, knowingly and intentionally did combine, conspire, and agree together and with each other and with other persons unknown to the Grand Jurors to unlawfully transport certain stolen motor vehicles and stolen property in foreign com-

merce, in violation of Sections 371, 2312, and 2314, Title 18, United States Code.

Pursuant to and for the purpose of carrying out said unlawful combination, confederation, conspiracy, and agreement and to effectuate the objects thereof, the following and other overt acts were committed in the Southern District of Texas, and elsewhere:

*Overt Acts*

5. That on or about March 8, 1980, JERRY JACKSON BLACKWELL, RONALD EUGENE HENDRICK, IDELFONSO PEREZ, JR., and OSCAR VELA met at Laredo, Texas.
6. That on or about March 7, 1980, JACK GRAVES telephoned IDELFONSO PEREZ, JR.
7. That on or about March 8, 1980, JERRY JACKSON BLACKWELL and RONALD EUGENE HENDRICK delivered 3 Ford pickup trucks to IDELFONSO PEREZ, JR., and OSCAR VELA.

■ Each of Graves's arguments suffers from the same flaw. He was charged with conspiracy to violate the Dyer Act and not with a substantive Dyer Act violation itself. Therefore, the sufficiency of the indictment must be measured with regard to a conspiracy to violate federal law rather than with regard for the substantive violations Graves conspired to commit. Viewed in this light, the indictment easily passes muster. " '[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' " *United States v. Bailey,* 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980), quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. L'Hoste,* 609 F.2d 796, 800 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). The indictment here satisfies both requirements, and therefore we cannot accept Graves's second argument.[3] Graves's first and third arguments—that the indictment is flawed because of its failure to allege the elements of a substantive violation of §§ 2312 and 2314—ignores literally decades of black-letter law to the contrary. In 1908, the Supreme Court rejected the same argument Graves advances here in *Williamson v. United States,* 207 U.S. 425, 447, 28 S.Ct. 163, 171, 52 L.Ed. 278:

> This [argument] is based upon the assumption that an indictment alleging a conspiracy to suborn perjury must describe not only the conspiracy relied upon, but also must, with technical precision, state all the elements essential to the commission of the crimes of subornation of perjury and perjury which, it is alleged, is not done in the indictment under consideration. But in a charge of conspiracy the conspiracy is the gist of the crime, and certainty, to a common intent, sufficient to identify the offense which

the defendants conspired to commit, is all that is required in stating the object of the conspiracy.

The Supreme Court returned to this theme in 1927 and described this point as "well settled":

> It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy . . . or to state such object with the detail which would be required in an indictment for committing the substantive offense.

*Wong Tai v. United States,* 273 U.S. 77, 81, 47 S.Ct. 300, 301–02, 71 L.Ed. 545 (citations omitted). Relying upon *Williamson* and *Wong Tai,* this Circuit has consistently rejected the argument that a conspiracy charge must spell out the elements of the substantive offense the accused conspired to commit. *E.g., United States v. Cuesta,* 597 F.2d 903, 917 (5th Cir.), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979); *United States v. Perez,* 489 F.2d 51, 70 (5th Cir. 1973), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974); *United States v. Fischetti,* 450 F.2d 34, 40 (5th Cir. 1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478 (1972); *Brown v. United States,* 403 F.2d 489, 490 (5th Cir. 1968), *cert. denied,* 397 U.S. 927, 90 S.Ct. 932, 25 L.Ed.2d 106 (1970); *Walker v. United States,* 342 F.2d 22, 27 (5th Cir.), *cert. denied,* 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965). *See also United States v. Evans,* 572 F.2d 455, 483 (5th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Bullock,* 451 F.2d 884, 888 (5th Cir. 1971). None of the cases cited by Graves are to the contrary.

We reject his argument that the indictment was defective.

### SUFFICIENCY OF THE EVIDENCE

■ Graves also argues that the evidence is insufficient to support his convic-

---

**3.** *Van Liew v. United States,* 321 F.2d 664 (5th Cir. 1963), upon which Graves primarily relies, is factually inapplicable.

tion. He does not challenge the sufficiency of the evidence to support his own participation in the conspiracy. Instead, his primary challenge is to the sufficiency of the evidence to support *Perez's* participation in the conspiracy. Relying upon selected portions of the transcript of Perez's testimony, Graves argues that Perez never realized that the trucks were stolen, refused to accept stolen trucks from Graves, and refused to participate in a scheme to transport stolen trucks into Mexico for resale. Because the evidence was insufficient to support Perez's involvement in the conspiracy, the jury should not have been permitted to consider this theory as a basis for convicting Graves. Therefore, because the jury could have rendered its verdict on a basis for which the evidence was insufficient, his conviction must be set aside under *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). We disagree.[4]

Conspiracy is an inchoate offense usually defined as an agreement between two or more persons to commit an unlawful act or to achieve a lawful end by illegal means. *See Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975); *United States v. Wilson*, 657 F.2d 755, 758 (5th Cir. 1981). The essential elements of the offense of conspiracy are an agreement between two or more persons to commit a crime and an overt act by one of them in furtherance of the agreement. *United States v. Wilson, supra*, 657 F.2d at 758; *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). The government must prove beyond a reasonable doubt that a conspiracy

existed, that the defendant knew of the conspiracy, and that, with that knowledge, he voluntarily became a part of it. *United States v. Davis*, 666 F.2d 195, 200–201 (5th Cir. 1982); *United States v. Welch*, 656 F.2d 1039, 1055 (5th Cir. 1981). However, the government need not establish its proof by direct evidence. Proof of a conspiracy may be established by circumstantial evidence and may be inferred from concert of action. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Wilson, supra*, 657 F.2d at 759. *See United States v. Sutherland*, 656 F.2d 1181, 1188 (5th Cir. 1981).

In reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Lerma*, 657 F.2d 786, 789 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. ——, 70 L.Ed.2d —— (1982). *All* of the evidence must be considered in the light most favorable to the government, *Jackson v. Virginia, supra*, and we must accept all credibility judgments and reasonable inferences that support the verdict. *United States v. Dean*, 666 F.2d 174, 177 (5th Cir. 1982). *See United States v. Lerma, supra*, 657 F.2d at 789.

■ Viewing the evidence in this light, we find it is sufficient to support the conclusion that Perez was a full partner to this scheme. While Perez did state at one point in his

---

**4.** Because we conclude that the evidence is sufficient to support the conclusion that Perez was a full participant in the conspiracy, we need not consider the government's argument, relying upon our decision in *United States v. Dilworth*, 524 F.2d 470, 471 n.1 (5th Cir. 1975) (per curiam), that *Stromberg* is applicable only where the jury's verdict could have been based upon erroneous *legal* grounds, not erroneous *factual* grounds. *See also Bradford v. United States*, 413 F.2d 467, 470–71 (5th Cir. 1969) (reversal not required in conspiracy case where evidence of one overt act insufficient if evidence of another is sufficient). Further expli-

cation of *Stromberg* may be forthcoming. *Stephens v. Zant*, 631 F.2d 397 (5th Cir. 1980), *amended on petition for rehearing and rehearing en banc*, 648 F.2d 446 (5th Cir.), *cert. granted*, —— U.S. ——, 102 S.Ct. 90, 70 L.Ed.2d 82 (1981). We do note, however, that appellant's suggestion that our holding in *Dilworth* was dicta because it was an alternative ground for decision simply will not wash. *See Kimble v. D. J. McDuffy, Inc.*, —— U.S. ——, —— n.4, 102 S.Ct. 687, 689 n.4, 70 L.Ed.2d 651 (1981) (White, J., dissenting from denial of certiorari); *id.* (authorities cited).

testimony that he did not realize that the trucks were stolen and would neither accept stolen trucks nor sell them in Mexico, Perez also refuted those statements at other points in his testimony. Perez testified that he thought Graves would take three of the several hundred trucks from the Dub Shaw Ford lot, put the title to these trucks aside, and send the trucks to him to be sold illegally. Then, Graves would report the trucks as stolen. Should the police intercept the trucks anywhere along the route, Graves would be able to state that he sent the trucks to Perez to be sold legally and could produce the titles to corroborate the story. Perez even called Graves on March 9, the day after he was arrested, to obtain the titles as they had planned. Perez not only admitted that Blackwell did not give him any of the titles to the trucks when Blackwell turned the trucks over to him and also admitted, after being impeached with a confession he had given to the Laredo police the day he was arrested, that he knew the trucks were stolen when he received them, but he also admitted that he knew that theft of the trucks from Dub Shaw Ford was part of the entire plan. Therefore, there was sufficient evidence for the jury to conclude that he knew the trucks were stolen and willingly received stolen trucks as part of the scheme despite his earlier statements. Furthermore, Officer Robert J. Guerrero of the Laredo Police Department, who had observed Blackwell, Perez, and Vela in the shopping center parking lot, testified that Perez and Vela inspected the trucks before taking possession as if Perez intended to buy them. Finally, Blackwell testified that Perez told him that he did not have the money to pay for the trucks upon delivery but would be able to obtain it on the following Monday, March 10th. Blackwell agreed and Perez drove off with his cousin in one of the trucks after Blackwell gave him the keys to all three. Therefore, there was sufficient evidence from which the jury could conclude that Perez was a full and voluntary participant in the conspiracy with Graves and Blackwell to steal the trucks for resale in Mexico. Appellant's reliance upon isolated segments of Perez's testimony not only overlooks other portions of his testimony and all of Blackwell's testimony, but also ignores what Perez *did.* Actions can speak louder than words.

After examining the entire record, we are convinced that the evidence is sufficient to support the jury's verdict and reject appellant's argument to the contrary.[5]

### ERROR IN THE CHARGE AND COMMENTS BY THE COURT

Graves next argues that the district court committed plain error by failing to instruct the jury that, in order for Graves to be convicted of conspiring to violate §§ 2312 and 2314, the government had to prove both that he knew that the trucks were stolen and that they had a value of at least $5,000. In addition, Graves argues that a comment upon the evidence by the district court during jury instructions usurped the role of the jury and directed it to find an essential element of the offense.

Knowledge by the defendant that the property moving in interstate or foreign commerce was stolen is an essential element of a violation of either § 2312 or § 2314. *United States v. Beil,* 577 F.2d 1313, 1314 (5th Cir. 1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979) (§ 2312); *United States v. Franklin,* 586 F.2d 560, 564 (5th Cir. 1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1536, 59 L.Ed.2d 789 (1979) (§ 2314). Therefore, the government must prove that a defendant knew that the vehicles were stolen in order to prove a conspiracy to violate § 2312 or § 2314. In reviewing the sufficiency of a district court's jury instructions, we must examine the adequacy of the charges as a whole in the context of the entire trial to determine whether they adequately presented the issues to the jury. *United*

---

5. Appellant also argues that the evidence was insufficient to connect Blackwell with the conspiracy and that the evidence was insufficient to connect Graves, Blackwell, and Perez. Both of these contentions are meritless.

*States v. Park*, 421 U.S. 658, 674–75, 95 S.Ct. 1903, 1912- 13, 44 L.Ed.2d 489 (1975). A district court has substantial latitude in tailoring his instructions so long as they fairly and adequately cover the issues presented by the case. *United States v. Pool*, 660 F.2d 547, 558 (5th Cir. 1981). Moreover, where, as here, the defendant neither submits proposed instructions nor objects to the instructions given by the district court he must demonstrate plain error to obtain a reversal. *United States v. Hinds*, 662 F.2d 362, 370 (5th Cir. 1981). We can find plain error only if the error is so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings and result in a miscarriage of justice. *Id.*

■ The district court's instructions were adequate to appraise the jury that it had to find that Graves knew that the trucks had been stolen in order to find him guilty of conspiracy. For instance, the district court specifically instructed the jury that Graves had been "charged with having participated in a plan to commit a crime. The crime that was planned here is the transportation, in foreign commerce of a stolen motor vehicle, *knowing that the vehicle was stolen.*" (emphasis added). There are other references as well in the court's instructions to the requirement that Graves had to be aware of the nature of the plan. We do not find any plain error in these charges.

■ Appellant's second argument—that the district court committed plain error by failing to instruct the jury that the vehicles had to have a minimum value of $5,000— misses the mark. While proof that the vehicles had a minimum value of $5,000 would have been necessary had Graves been charged with a substantive violation of § 2314, *United States v. Perry*, 638 F.2d 862, 864–65 (5th Cir. 1981), that proof is unnecessary here because Graves was charged with conspiracy to violate § 2314. *United States v. Rose*, 590 F.2d 232, 236 (7th Cir. 1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); *United*

*States v. Maddox*, 492 F.2d 104, 106 (5th Cir.), *cert. denied*, 419 U.S. 851, 95 S.Ct. 92, 42 L.Ed.2d 82 (1974); *Carlson v. United States*, 187 F.2d 366, 369–70 (10th Cir. 1951). *Cf. United States v. Rose, supra*, 590 F.2d at 235–36 (proof that goods travelled in interstate or foreign commerce unnecessary for conspiracy to violate § 2314); *United States v. Franklin, supra*, 586 F.2d at 565–66 (proof that defendant knew that goods had travelled in interstate or foreign commerce unnecessary for conspiracy to violate § 2314). The district court did not err by omitting this charge.

■ Finally, we do not believe that the district court's comments upon the evidence during jury instructions requires reversal. While instructing the jury, the court made the following remark: "I don't think the defendant or anyone really argues too much that these trucks were stolen and they were taken from where they were stolen down to Laredo." Any error was neither substantial nor harmful. The evidence was overwhelming that the trucks had been stolen and that they had been transported from Fort Worth to Laredo. Finally, at another point in the instructions, the district court made it clear to the jury that it was to decide the factual issues in the case, including the question of whether the trucks had been stolen. The district court's comments do not constitute plain error. *Cf. United States v. Gerald*, 624 F.2d 1291, 1299–300 (5th Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981).

## ALLEGED ERROR IN THE COURT HAVING CONFERENCE WITH COUNSEL IN THE ABSENCE OF DEFENDANT

At the conclusion of the government's case, the trial court excused the jury and permitted appellant to leave, in order to accommodate his recent medical problems, after informing him that he would defer hearing any defense motions until Graves could be present but wanted to speak to defense counsel. During the colloquy that followed among the trial judge, Graves's counsel, and the attorney for the govern-

ment, the trial court informally notified defense counsel that he thought the government had established a prima facie case. The court then invited counsels' views regarding possible jury instructions. In response to the court's inquiry whether the defense had decided if Graves would testify, Graves's counsel informed the court that Graves would probably testify the following day against the advice of his counsel. Graves now argues that the occurrence of this discussion and his counsel's disclosure in his absence constituted plain error in violation of his constitutional and statutory right to be present at every stage of his trial. We disagree.

Graves relies upon *McKissick v. United States*, 379 F.2d 754 (5th Cir. 1967) as support for his argument that he had a right to be present at the colloquy between the trial court and the parties. *McKissick* was, as the court itself noted, an "unusual case." *Id.* at 760. McKissick took the stand on the first day of trial. At the conclusion of his testimony, the trial court dismissed the jury and engaged in a lengthy cross-examination of McKissick. After completing its questioning, the trial court stated that "[t]here is the worst case of perjury in this case I have ever seen since I have been on the Bench," and that either McKissick or a government witness had lied while on the stand. During an overnight recess, McKissick confessed to his counsel that he had perjured himself on the stand, and his counsel relayed that information to the trial judge the following morning at a conference in chambers apparently unattended by McKissick. The trial judge decided to declare a mistrial and entered that conclusion upon the record in open court immediately following the conference. On appeal, we concluded that denying a defendant the opportunity to be present during that conference jeopardized his right to confrontation and his right to have the assistance of counsel at a critical stage in the proceedings against him. *Id.* at 760–62. Accordingly, we remanded the case for the district court to determine, *inter alia*, whether McKissick was, in fact, absent from the conference, and, if so, whether he had waived his right

to be present and, if not, whether his absence was constitutionally harmless. *Id.* at 762–63.

This case is quite unlike *McKissick*. Here, the district court did not make any legal or factual ruling of any type during the conference, and clearly did not jeopardize Graves's "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), his right to confront the witnesses against him, or his right to the assistance of counsel. This conference, a type customarily occurring in criminal cases, was merely an informal interchange between the trial court and counsel for both parties that focused upon the jury instructions that the court would give at the end of trial. The trial court's decision to discuss jury instructions with counsel in the absence of the defendant was not error. A defendant does not have a federal constitutional or statutory right to attend a conference between the trial court and counsel concerned with the purely legal matter of determining what jury instructions the trial court will issue. Fed.R. Crim.P. 43(c)(3) (defendant need not be present "[a]t a conference or argument upon a question of law."); *United States v. Gregorio*, 497 F.2d 1253, 1256–60 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974); *United States v. Lewis*, 420 F.2d 686, 687 (5th Cir. 1970) (per curiam); *Root v. Cunningham*, 344 F.2d 1, 3–5 (4th Cir.), *cert. denied*, 382 U.S. 866, 86 S.Ct. 135, 15 L.Ed.2d 104 (1965); *Deschenes v. United States*, 224 F.2d 688, 693 (10th Cir. 1955); *Pope v. United States*, 287 F.Supp. 214, 218–19 (W.D.Tex.1967), *aff'd*, 398 F.2d 834 (5th Cir. 1968) (per curiam), *cert. denied*, 393 U.S. 1097, 89 S.Ct. 886, 21 L.Ed.2d 787 (1969); *Brown v. Pepersack*, 217 F.Supp. 547, 550 (D.Md.1963), *aff'd*, 334 F.2d 9, 11 & n.5 (4th Cir.), *cert. denied*, 379 U.S. 917, 85 S.Ct. 269, 13 L.Ed.2d 188 (1964). *Cf. Schwab v. Berggren*, 143 U.S. 442, 12 S.Ct. 525, 36 L.Ed. 218 (1892) (defendant has no constitutional or common law right to attend appellate proceedings); *United States v. Sinclair*, 438 F.2d 50, 52 (5th Cir.

1971) (defendant has no right to attend chamber's conference discussing admissibility of testimony); *Steiner v. United States*, 134 F.2d 931, 935 (5th Cir.), *cert. denied*, 319 U.S. 774, 63 S.Ct. 1439, 87 L.Ed. 1721 (1943) (same, arguments on trial motions). In *Lewis, supra*, the defendant was absent from four conferences in chambers between the trial judge and counsel. Two of these conferences involved evidentiary matters and two involved jury instructions. We concluded that "none of the four meetings referred to was a stage of the trial which required the accused's presence," and held that his absence did not violate either Fed. R.Crim.P. 43 or our earlier decision in *McKissick*. *United States v. Lewis, supra*, 420 F.2d at 687. *Lewis*, not *McKissick*, is controlling here and requires us to reject appellant's claim that he was denied the right to attend every stage of his trial.

The judgment of the district court is AFFIRMED.