UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 91-7261

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENNIS J. MURRAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

(April 1, 1993)

Before DUHE', and BARKSDALE, Circuit Judges and HUNTER[1], District
Judge.

EDWIN F. HUNTER, JR., District Judge

On November 6, 1992, a five count indictment was returned
against defendant-appellant, Dennis Murray, for his alleged role in
an illegal firearms transfer. The basis of the indictment was that
Murray, a previously convicted felon, participated with, and
facilitated Glenn Reid in the sale of a sawed-off shotgun and a .38
caliber revolver to acting, undercover agents for the Bureau of
Alcohol, Tobacco, and Firearms. After trial by jury, defendant
was found guilty on four charges. We affirm Murray's conviction on
Counts II, III, and IV. Murray's conviction on Count V is reversed
for insufficient evidence.

_____

[1] Senior Judge of the Western District of Louisiana,
sitting by designation.

## Background

In April of 1990, Dennis Murray went to work for Glenn Reid at Reid's business, "Fat Charlie's Buy and Sell". While at the pawn shop, Murray performed a variety of tasks including, receiving broken appliances, repairing appliances, and moving heavy items around the store. Whenever Reid was away from the store, Murray was often left in charge of the business.

Reid's business encompassed more than just buying and selling appliances. He was also a licensed gun dealer; and consequently, guns were kept in the shop under lock and key. Due to his previous felony conviction, Murray was not allowed to handle the guns.

The Bureau of Alcohol, Tobacco, and Firearms ("ATF") began an investigation of "Fat Charlie's" when Thomas Walker, an ex-police officer, notified them of possible illegal gun transactions. Under the auspices of the ATF, Walker secured the assistance of Jerry Atkinson, a former employee at "Fat Charlie's". They agreed to participate in an undercover ATF investigation to purchase illegal firearms from Glenn Reid.

On April 20, 1990, Atkinson (in a recorded conversation) telephoned Reid, and arranged for the purchase of an unregistered, sawed-off shotgun, plus other handguns. Reid agreed to supply the weapons, despite his knowledge that Atkinson was a previously convicted felon, and could not purchase firearms through legitimate channels.

On April 26, 1990, Reid asked Murray to take a ride with him in his van. Reid placed a rectangular styrofoam box between the front seats. From one end of the styrofoam, the stock of a shotgun

was clearly visible. The barrel of the gun extended from the opposite side. Despite the obvious nature of the box's contents, Murray contends that he never suspected that the styrofoam contained a firearm.

Reid and Murray drove to Atkinson's house, where Reid and Atkinson were to consummate the firearm transaction. Unbeknownst to Reid and Murray, Atkinson had a hidden microphone taped to his body. Special Agent Wright of the ATF hid in another room of the house, monitoring and recording the proceedings. Murray carried the styrofoam package inside the house, and waved it about exclaiming, "Smile, I'm taking your picture." Subsequently, Murray handed the styrofoam-encased shotgun to Atkinson, who turned it over to Walker. The styrofoam package was opened, and the shotgun exposed to view. Reid also offered to sell a .38 caliber revolver to the ATF informants, which they agreed to buy.

The conversation between the men focused upon the purchase of the firearms and the characteristics of the weapons. Murray took an active role in the dialogue. Instead of indicating surprise or apprehension upon learning the true purpose of the visit, Murray laughed, joked, and contributed as if he knew all along what had been planned. When Atkinson asked Reid whether the shotgun would fire, Murray responded, "Na. That son of a bitch will shoot." When Reid was asked whether he had any shells for the shotgun, Murray volunteered, "I think you do have, didn't somebody come by there and sell you a bunch of them the other day?...Did you buy them from that boy, he had a box full of them." After the

3

discussion ended, Reid was paid. The weapons were left with the informants.

Dennis J. Murray was charged with a five count indictment. The charges included: I) conspiracy with Glenn Reid to violate federal firearms law, 18 U.S.C. § 371; II) possession by a previously convicted felon of a firearm which had been transported in interstate commerce - 18 U.S.C. § 922(g)(1); III) aiding and abetting Reid in the transfer of an unregistered firearm - 26 U.S.C. §§ 861(c) and 5871; IV) possession of an unregistered firearm - 26 U.S.C. §§ 5861(d) and 5871; and V) aiding and abetting Reid in the sale of a firearm to a convicted felon - 18 U.S.C § 922(d)(1).

Murray was tried by jury on September 9, 1991. At the close of the government's case, the court granted an acquittal on Count I, and as to the sale of a .357 Magnum listed in Count V, due to insufficient evidence. The remaining charges went to the jury. Murray was found guilty on Counts II, III, IV and V. Appellant was sentenced to thirty months imprisonment on each count to run concurrently, plus two years supervisory release. Murray appeals the sufficiency of the evidence, and questions the admission of Reid's guilty plea. We consider these issues in turn.

### Sufficiency of the Evidence

**Counts II-IV**

The appropriate standard of review is whether, "any rational trier of fact could have found the essential elements beyond a reasonable doubt." United States v. Webster, 960 F.2d 1301 (5th

4

Cir.), cert. denied, in Nelson v. United States, 113 S.Ct. 355 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979). A conviction challenged for insufficiency of the evidence must be considered in the light most favorable to the prosecution. United States v. Hopkins, 916 F.2d 207 (5th Cir. 1990); Jackson v. Virginia, 443 U.S. at 318-319.

The basis for Murray's appeal on Counts II-IV is that he remained unaware of the contents of the styrofoam package until after the transfer. Thus, he argues that he could not possibly have knowingly possessed the firearm as required to sustain the conviction. United States v. Parker, 566 F.2d 1304, 1306 (5th Cir. 1978), cert. denied, 435 U.S. 956 (1978).

The evidence reveals that the styrofoam-encased shotgun rested under the counter at "Fat Charlie's" for a considerable time; and that Murray picked up the package from inside the van, and carried it to the transfer site. Then, too, Murray waved the shotgun around, and pointed it at the undercover agents exclaiming, "Smile, I want to take your picture." Obviously, either Murray thought he was carrying a camera, or he was making a joke, knowing full well that the styrofoam contained a shotgun. We reject defendant's argument that the evidence did not suffice to prove beyond a reasonable doubt that he knowingly possessed the firearm.

**Count V**

Murray was convicted of aiding and abetting co-defendant, Reid, in the sale of firearms to a previously convicted felon

(Atkinson) in violation of 18 U.S.C. § 922(d)(1).[2]  The statute requires that the perpetrator either know or have reasonable cause to believe that the transferee was a previously convicted felon. Murray argues that the evidence is insufficient to establish beyond a reasonable doubt that he knew that Atkinson had been previously convicted.  The government implicitly argues that even if the evidence is insufficient to conclude that Murray personally knew that Atkinson was a convicted felon, it is undisputed that co-defendant, Reid, was aware of Atkinson's status, and this knowledge was attributable to Murray as an aider and abettor.

The only evidence presented by the government that Murray had personal knowledge of Atkinson's prior conviction was testimony by Atkinson and Bobby Williams (a friend of Glenn Reid's).  Atkinson stated that Reid used to joke about Atkinson's conviction "all the time" in front of Murray and other employees.  But, there was no proof offered that Murray was definitely present on any specific occasion, or that he was within earshot of the conversations. Williams merely testified that it was common knowledge around "Fat Charlie's" that Atkinson was a previously convicted felon.  On no

---

[2]  18 U.S.C. § 922(d) (1) provides in pertinent part:
It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person is

(1) under indictment for, or has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year. (emphasis added).

occasion prior to the transfer had Murray actually met or talked with Atkinson. Atkinson's prior conviction was not discussed or referred to at the time of the firearms sale. No witness testified that Murray was present, or that Murray definitely overheard references to Atkinson's prior criminal history. We find that the evidence was not sufficient to support the conclusion that defendant was aware of Atkinson's record.

Having decided that the evidence was insufficient to establish that Murray was personally aware of Atkinson's conviction, our next focus is to consider whether a principal may supply the requisite criminal knowledge or intent which is necessary to satisfy a conviction against an aider and abettor.

In order to sustain a conviction for aiding and abetting, the government must demonstrate that the defendant: 1) associated with a criminal venture; 2) participated in the venture; and 3) sought by action to make the venture succeed. United States v. Martiarena, 955 F.2d 363, 366 (5th Cir. 1992). "Association" means that the defendant shared in the criminal intent of the principal. "Participation" means that the defendant engaged in some affirmative conduct designed to aid the venture. Mere presence and association are insufficient to sustain a conviction for aiding and abetting. Id. The essence of aiding and abetting is a "community of unlawful intent" between the aider and abettor and the principal. United States v. Pena, 949 F.2d 751, 755 (5th Cir. 1991). Although the aider and abettor need not know the means by which the crime will be carried out, he must share in the requisite

7

intent.  <u>United States v. Westbo</u>, 746 F.2d 1022, 1025 (5th Cir. 1984).

Under 18 U.S.C. § 922 (d)(1), it is the purchaser's status as a felon which makes the activity criminal.  If the aider and abettor does not know this fact, it is difficult to say that he shared in the criminal intent of the principal.

There is no doubt that Murray was in possession of an unregistered firearm.  But, since 28 U.S.C. § 922(d)(1) is an added offense with enhanced elements, it was incumbent upon the prosecutor to establish that Murray knew or had reasonable cause to believe that Atkinson was a convicted felon.  <u>United States v. Longoria</u>, 569 F.2d 422, 425 (5th Cir. 1978).  The mental state of the principal alone, is insufficient to inculpate an aider and abettor.  <u>United States v. Williams</u>, No. 91-7284, 1993 WL 46565 (5th Cir. Feb. 24, 1993);  <u>United States v. Beck</u>, 615 F.2d 441 (5th Cir. 1980).  Murray may very well have known that Reid was going to transfer unregistered firearms, but he did not know (or at least there is precious little evidence to show) that Reid was committing the additional offense of selling firearms to a felon. The very intent which makes this conduct criminal is the knowledge or reasonable belief that the transferee is a previously convicted felon.  We must conclude that the evidence adduced by the government at trial, when viewed most favorably to the verdict, cannot support an inference of guilt as to  Count V.

## **Prejudicial Reference**

Murray's co-defendant, Reid, testified in favor of the

defense.  Before tendering the witness, defense counsel elicited the fact that Reid pled guilty to conspiring with Murray to violate the federal firearms laws.  On cross-examination, the prosecutor extensively questioned Reid concerning the apparent inconsistencies between his testimony at Murray's trial, and the implications of his guilty plea to the conspiracy charge.  Despite these references to Reid's guilty plea, the judge was never requested to, nor did he sua sponte instruct the jury on the limited evidentiary purpose of the co-defendant's guilty plea.  Also, defense counsel made no objection at trial.  Accordingly, we review this issue under the plain error standard, examining whether the error seriously affected the defendant's substantial rights.  United States v. Leach, 918 F.2d 464, 467 (5th Cir. 1990), cert. denied, 111 S.Ct. 2802 (1991) (citing United States v. Mattoni, 698 F.2d 691 (5th Cir. 1983)).  Plain error is an error, "so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice."  United States v. Fortenberry, 914 F.2d 671, 673 (5th Cir. 1990), cert. denied, 111 S.Ct. 1333 (1991) (citing United States v. Graves, 669 F.2d 964, 971 (5th Cir. 1982)).

In United States v. Black, the Court enumerated the factors to be considered when evaluating the impact of a witness' guilty plea. They include:  1) the presence or absence of a limiting instruction; 2) whether there was a proper evidentiary purpose for introduction of the guilty plea; 3) whether the plea was improperly

9

emphasized or used as substantive evidence of guilt; and 4) whether the introduction of the plea was invited by defense counsel. United States v. Black, 685 F.2d 132, 135 (5th Cir.), cert. denied, 459 U.S. 1021 (1982); United States v. Leach, 918 F.2d at 467; United States v. Borchardt, 698 F.2d 697, 701 (5th Cir. 1983). Our analysis of the facts reveal that two of the four factors are present. First, the prosecution clearly had a proper purpose in emphasizing the guilty plea. The plea served to impeach the witness' testimony. Second, it was the defendant who originally introduced the guilty plea. Moreover, the defendant did not object to the prosecutor's questioning, nor did he request a limiting instruction from the judge. See United States v. Cook, 461 F.2d 906 (5th Cir.), cert. denied, 409 U.S. 949 (1972) (found no plain error when defendant's attorney introduced co-defendants' guilty pleas) and United States v. Bass, 562 F.2d 967 (5th Cir. 1977) (no plain error where: government elicited guilty pleas, no objection by defense, and defense emphasized guilty pleas on cross-examination).

Similarly, in United States v. Howard, the Court found no plain error where the same two Black factors were present as in the case sub judice. United States v. Howard, 961 F.2d 1571 (5th Cir. 1992) (unpublished opinion)[3]. The facts in Howard are virtually

---

[3] According to local rule 47.5.3, unpublished opinions are precedent, but may only be cited when: "1) it establishes the law of the case, 2) is relied upon as a basis for res judicata or collateral estoppel, or 3) involves related facts." Finding the circumstances in Howard closely related to the facts herein, a copy of the opinion is attached.

10

identical to the facts in this case. Not only did defense counsel not object to the testimony, he was the one who introduced it. <u>Howard</u>, <u>supra</u>. Murray suffered no plain error as a result of Reid's guilty plea.

## <u>Conclusion</u>

We affirm Murray's conviction on Counts II, III, and IV. Murray's conviction on Count V is reversed. A review of the pre-sentencing report indicates that the reversed charge factored into defendant's sentence calculation, and accordingly, resentencing is necessary.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.