# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00396-CR
NO. 03-10-00397-CR

**Anthony Watson, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NOS. D-1-DC-09-302891 & D-1-DC-10-300380
HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Anthony Watson was charged with two counts of assault-family violence. *See* Tex. Penal Code Ann. § 22.01 (West 2011). He waived a jury, and following a bench trial, the trial court found him guilty of both counts, sentencing him to six years imprisonment. On appeal, Watson argues that the testimony by the complainant, Jaamikah Bush, was not credible and that the evidence is thus legally insufficient to support the court's guilty verdicts. He further complains that the trial court erred in refusing to allow his attorney to pursue a line of questioning about Bush's activities after one of the assaults. We affirm the trial court's verdicts.

Watson dated Bush for about two years. Bush admitted at trial that she had "a depression disorder" and a hot temper and that she would "rant and rave" when angry. She testified that before the assaults in question, she had called the police approximately seven times to report that Watson had assaulted her. She admitted that with regard to those earlier reports, at least twice she

later lied and told prosecutors that Watson had not assaulted her and that the charges should be dismissed or dropped to misdemeanors.

The first charge at issue here arose from a fight at Bush's house in the early hours of December 22, 2009. Bush was in the early stages of pregnancy, and she testified that she had told Watson that she was pregnant but that he was not the father.[1] Watson slapped Bush in the face and hit her in the nose, mouth, eyes, and chest. Bush testified that after Watson slapped her several times, he began to strike her with his closed fist. Bush testified that Watson hit her in the face hard enough that "his knuckle prints were in my face" and that she lost consciousness when he punched her twice in the nose, leaving her nose and mouth bloodied and her right cheek bruised and swollen for months after the assault. After the assault, Watson ordered Bush to clean herself up, so Bush went to the bathroom and washed her face. Bush testified that when Watson eventually fell asleep in the bedroom, she went to another room and fell asleep there.

When Bush woke up, she called James Davis, her ex-boyfriend who lived up the street. Bush ran to Davis's house, and Davis drove her to his mother's house. Davis's mother called the police to report the assault, and Officer Corey Wroblewski responded to the call. Wroblewski testified that he interviewed Bush on the afternoon of December 22 and that she was very upset. He "observed clear injuries" that appeared to be recent and took photographs of Bush's injuries. Wroblewski testified about his photographs and said they showed "bruising below the left eyebrow" and "discoloration that would not be consistent with a normal, healthy human being." He said that although it was difficult to see in the photos, there was "darkening of her left eye" and "puffiness

_____

[1] It is not clear whether Watson knew about the pregnancy before the fight started or whether Bush's disclosure that he was not the father was a cause of this fight.

on her lip."[2] Wroblewski did not notice injuries to Bush's chest, nose, face, or arms, nor did he see tears in her clothes or signs of a fight at her house when he went there with her so she could retrieve her belongings. After the interview, Bush and Davis went to a motel together for two days.

Bush and Watson apparently reconciled by the time of the second assault, which occurred about two months later on February 18, 2010. Bush again got angry at Watson. Bush testified that when Watson watched her scream and yell and then acted like he was going to sleep, she got "madder and madder" and "walk[ed] around the house screaming, cussing, yelling." Bush said that Watson stood up and slammed her head into a light switch on the wall, slapped her twice, and punched her in her face and shoulder. Bush testified that at one point during the assault, Watson punched Bush in the stomach and "told me to be quiet because if he lose [sic], then I would lose, too." She interpreted his statement as threatening to cause her to miscarry if she continued to yell, testifying that she had miscarried about two years earlier after Watson punched her in the stomach. Bush said Watson had a warrant out for his arrest and had told her "he was terrified . . . to be around me because . . . he knows that I will call the police and so he just didn't want to go to jail."

In addition to Wroblewski's photos, the State introduced two photos at trial, identified as State's Exhibit 15. Those photos were taken some time before the December 2009 assault and show Bush strapped to a board to immobilize her head and neck, with blood on her mouth and chin.

---

[2] The photographs taken by Wroblewski on December 22 show some swelling and discoloration on Bush's lip and left eyelid and some kind of mark or discoloration on her right cheek. Contrary to Bush's description of her injuries, the photographs as they appear in the record do not show knuckle prints on her face, and the swelling and bruising appear fairly light. Bush explained that her cheek had begun to swell when the photos were taken, but that it got worse over time.

Bush testified that these injuries were the result of an earlier assault by Watson ("the 2008 assault").[3] Bush admitted that after she received medical attention and made a police report for that assault, she recanted, telling the prosecutor that the assault had not happened and that she would not testify. The State also introduced records of Watson's criminal history: three convictions for assault-family violence, once in 2008 and twice in 1991; convictions for cocaine possession in 2006, 1999, and 1997; a 1990 conviction for burglary of a vehicle; a 1989 conviction for failure to identify himself; a 1988 conviction for theft; and a 1984 conviction for burglary of a habitation.

Watson called several witnesses who testified that they had seen Bush be physically and verbally abusive to Watson and that Watson never reciprocated. They also testified that they had been present when Bush threatened to call or actually called the police to falsely report that Watson had hit her. None of Watson's witnesses were present during the alleged assaults, nor had they seen Bush with injuries like those shown in Wroblewski's photographs. Michelle Jackson, who has three children with Watson, testified that she once saw Bush hit herself on the lip and threaten to tell the police Watson had done it. Jackson admitted on cross-examination that she had been the victim of domestic violence at Watson's hands.

When Watson testified, he denied hitting Bush on either of the occasions in question. He also testified that until hearing Bush's trial testimony, he believed he was the father of Bush's baby. Watson testified about numerous occasions when Bush made false reports and said

_____

[3] The prosecutor in this case was also involved in the case arising from the assault depicted in these photos. The prosecutor was not certain of when that assault occurred, but thought it was in 2009. The records of Watson's prior convictions, however, show that he was accused of felony assault-family violence against Bush after an incident in January 2008, and that in August 2008, he pled guilty to a reduced misdemeanor charge of assault-family violence. We will refer to the assault related to Exhibit 15 as "the 2008 assault."

4

the police usually investigated and left without arresting Watson. Watson said that Bush was "bipolar, schizophrenic, and a host of other things" and did not like to take her medicine.

Finally, Watson also called the State's prosecutor, Jackie Wood. Wood testified that she had been involved in the case related to the 2008 assault, the aftermath of which was depicted in Exhibit 15's photographs showing Bush immobilized with blood on her mouth and chin. In that case, after reporting that Watson had assaulted her, Bush told Wood that she had lied to the police and that the assault had not occurred. Wood testified, "She told me that she was bipolar and that she was off of her medication and that it didn't happen and she wasn't going to testify." Wood told the trial court that she reduced the charges against Watson due to Bush's refusal to cooperate.[4] In her closing statement, Wood touched on Bush's history of alleging that Watson had assaulted her and then recanting, stating, "You have had testimony about how much these two people have clogged up our testimony [sic] of them going back and forth wanting to drop charges, saying it didn't happen when it is clear that it did. That is why the State is finally presenting this evidence to the Court."

On appeal, Watson argues that the evidence is legally insufficient to support his convictions because Bush's testimony about the assaults, particularly the December 2009 assault, is "so unbelievable on its face that it defies physical laws." He points to Bush's testimony that her face swelled up "[t]o a pumpkin" so her eyes were only slits, that Watson punched her in the nose hard enough that she lost consciousness, and that Watson's fist left knuckle prints in her face, and argues that because Wroblewski's photographs show "virtually no injury to her face," we should find

_____

[4] Watson testified that he pled guilty in the earlier assault, and, as we noted in footnote 3, the State's exhibits reflect that he pled guilty to a misdemeanor charge of family violence against Bush.

all of Bush's testimony incredible as a matter of law and should strike it from the record. However, the case Watson cites, *United States v. Lerma*, does not support his argument. *See* 657 F.2d 786 (5th Cir. 1981). In *Lerma*, a witness admitted that he had committed arson and insurance fraud and that he had lied to a trial court in another proceeding. *Id.* at 789. The court stated, "Whether Dickenson testified truthfully was an issue for the jury. Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law. Despite the attack on his credibility, the jury evidently found Dickenson's testimony to be trustworthy." *Id.* (citations omitted); *see also Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (that witness was admitted perjurer and drug user went to weight of evidence; "These issues were therefore within the province of the jury as the exclusive judge of the credibility of the witness and the weight to be given her testimony."); *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976) (evidence that witness "consistently lied in the past, engaged in various criminal activities, thought that his testimony would benefit him, and showed elements of mental instability does not make his testimony incredible"). *Cf. Geigy Chem. Corp. v. Allen*, 224 F.2d 110, 114 (5th Cir. 1955) (in light of physical evidence, testimony about speed of car was "contrary to the laws of nature and of human experience").

Bush admitted that she had lied to the police and prosecutors in the past. She also testified that she did not know what time the events in question occurred and had only vague recollections about it being daytime. Although Bush testified that Watson hit her hard enough to leave knuckle prints and that her face was swollen for months after the assault, the photographs taken the next morning do not show knuckle prints, and the swelling and bruising appear fairly light in the exhibits included in the appellate record. Watson's witnesses testified that Bush was a liar and

frequently threatened to make false reports to get Watson in trouble. However, despite the defensive testimony, Bush's credibility problems, and the photos, Bush's testimony did not "def[y] physical laws." Bush testified that her face swelled further after her interview with Wroblewski, and Watson did not present evidence establishing that Bush's injuries could not have worsened as she explained. Further, even if Bush exaggerated the extent of her injuries, Wroblewski testified that he saw visible and fresh injuries on Bush's face, and Bush both told Wroblewski during her interview and testified at trial that those injuries were caused by Watson's assault. Bush's testimony did not defy the laws of physics and was not incredible as a matter of law. *See Lerma*, 657 F.2d at 789.

Watson also argues that we should require corroboration of Bush's accusations due to her alleged history of falsely accusing Watson of assault, her history of mental illness and lying to the police, and her admissions that she had a bad temper, had twice been charged with assaulting Watson, and had "provok[ed] both of the alleged assaults."[5] However, Watson points to no authority requiring corroboration of an assault victim's testimony, no matter what her background or credibility problems. *See Padilla v. State*, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008, pet. ref'd) ("If believed, the victim's testimony alone is sufficient to support a guilty verdict.").

It was up to the trial court to hear all of the testimony, including Bush's admission of past untruths, weigh conflicting testimony, and determine which witnesses were credible and which were not. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (appellate courts "should afford almost total deference to a trial court's determination of the historical facts that the

---

[5] Although Bush admitted that she continued to "rant and rave" while Watson initially refused to engage in an argument with her, we cannot agree with Watson's characterization that such behavior should be viewed as "provoking" physical violence.

record supports[,] especially when the trial court's fact findings are based on an evaluation of credibility and demeanor"); *see also Brown*, 270 S.W.3d at 568 (credibility of witness was matter for jury to determine). We will not re-evaluate those determinations. *See Davis v. State*, 831 S.W.2d 426, 434 (Tex. App.—Austin 1992), *pet. ref'd*, 893 S.W.2d 252 (Tex. Crim. App. 1995) (appellate courts "do not reweigh the credibility of the witnesses"). Bush's testimony, especially combined with Wroblewski's corroborating testimony that he saw bruising and swelling on Bush's face several hours after the December 2009 assault, provided a sufficient basis for the trial court to find Watson guilty of both counts. *See Padilla*, 254 S.W.3d at 590. We overrule Watson's first issue on appeal.

Watson next complains that the trial court erred in refusing to allow him to inquire into Bush's activities at the motel after the December 2009 assault. Bush testified that she went to Davis's house the morning after the assault and that after her police interview, she and Davis stayed in a motel together for two days. Watson asked, "What did you do there?" The State objected to the question on grounds of relevance, and the trial court sustained the objection. The trial court explained, "[Y]ou can ask things that happened but they have to be relevant. Everything that happens is not relevant. The State has objected to what happened—the question was what happened in the hotel." Watson asked if he could make a bill of exception, and the trial court answered, "When we finish, yes." Watson did not make a bill of exception.

Watson argues that the court erred because "a further inquiry into [Bush's] actions in the motel just hours after the assault would have allowed the defense to further question the authenticity of her claims of assault." Specifically, he asserts that he was prevented from inquiring into what Bush told Davis at the motel, what her demeanor was like, whether she did anything to

8

care for her injuries, and the activities she engaged in while at the motel. However, the trial court only barred Watson from asking Bush a general question about what she did at the motel. Watson did not attempt to ask Bush what she said to Davis, what her demeanor was at the motel, or whether she treated her injuries there, nor did he attempt to call Davis to ask about such issues. Watson was not prevented from asking alternative questions seeking the kind of information that he argues would have been relevant, and he did not ask more specific questions or make a bill of exception. Watson has not shown that the trial court abused its discretion in sustaining the State's objection to his question. *See Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). We overrule Watson's second issue.

Having overruled both of Watson's issues, we affirm the trial court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 26, 2011

Do Not Publish